24-2097-cv
*Blanford v. Dudek*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of May, two thousand twenty-five.

PRESENT:      GERARD E. LYNCH,
              SARAH A. L. MERRIAM
              MARIA ARAÚJO KAHN,
                   *Circuit Judges*.

_____

ROBERT N. BLANFORD,

        *Plaintiff-Appellant*,

             v.                                                    24-2097-cv

LELAND DUDEK, Acting Commissioner of
Social Security,

        *Defendant-Appellee*.*

_____

---

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), the Clerk of Court is respectfully directed to amend the caption as reflected above.

FOR PLAINTIFF-APPELLANT: JOHN J. MORAN (Daniel S. Jones, *on the brief*), Binder & Binder, P.C., New York, NY.

FOR DEFENDANT-APPELLEE: TIMOTHY A. RAZEL (Suzanne M. Haynes, Office of Program Litigation, Social Security Administration, *on the brief*) *for* Marc H. Silverman, Acting United States Attorney for the District of Connecticut, New Haven, CT.

Appeal from the June 10, 2024, judgment of the United States District Court for the District of Connecticut (Oliver, *J.*).

**UPON DUE CONSIDERATION,** the judgment of the District Court is **AFFIRMED**.

Plaintiff-Appellant Robert N. Blanford appeals from the District Court's judgment affirming the Commissioner of Social Security's ("Commissioner") denial of his application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§401 *et seq.* We assume the parties' familiarity with the facts, the procedural history, and the issues on appeal, to which we refer only as necessary to explain our decision.

"On an appeal from the denial of disability benefits, we focus on the administrative ruling rather than the district court's opinion." *Rubin v. O'Malley*, 116 F.4th 145, 154 (2d Cir. 2024) (citation and quotation marks omitted). "[W]e review the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) (citation and

2

quotation marks omitted). Substantial evidence is "more than a mere scintilla," and requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citation and quotation marks omitted). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Rubin*, 116 F.4th at 155 (citations and quotation marks omitted). Indeed, under the substantial evidence standard, we may reject facts found by the Administrative Law Judge ("ALJ") "only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation and quotation marks omitted).

Blanford challenges the Commissioner's denial of benefits on several fronts. We address each in turn.

## I. The ALJ Properly Evaluated the Medical Opinion Evidence in Determining the RFC, Which Is Supported by Substantial Evidence.

### A. Evaluation of the Medical Evidence

New regulations governing the consideration of medical opinions apply to SSI claims, like Blanford's, filed on or after March 27, 2017. *See* 20 C.F.R. §416.920c. Under the new regulations, which do away with the previous "treating physician rule," the Commissioner must evaluate the persuasiveness of every medical opinion pursuant to the factors listed in §416.920c(c)(1)-(c)(5). *See* 20 C.F.R. §416.920c(a). "The most important factors . . . are supportability . . . and consistency." *Id.* The Commissioner must "explain how [the agency] considered the supportability and consistency factors for

3

a medical source's medical opinions or prior administrative medical findings in [a claimant's] determination or decision," and may choose to explain the other factors. *Id.* §416.920c(b)(2). Supportability refers to how well "the objective medical evidence and supporting explanations presented by a medical source . . . support [that source's] medical opinion." *Id.* §416.920c(c)(1). Consistency refers to how "consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim." *Id.* §416.920c(c)(2).[1]

Upon review of the record, we conclude that the ALJ properly evaluated the medical opinion evidence under Section 416.920c and adequately explained those evaluations. The ALJ considered the supportability and consistency of each medical opinion. *See* Administrative Record ("Admin. R.") at 47-50. Blanford focuses primarily on the opinion of Nurse Practitioner ("NP") Charles. NP Charles completed an assessment finding that Blanford had several "marked limitations," and the ALJ found that assessment "unpersuasive" because it was "not consistent with or well supported by the record." *Id.* at 50. Blanford contends that the ALJ failed to consider the consistency of NP Charles's opinion with objective medical evidence and with the opinion of Dr.

---

[1] Blanford contends that this Court has not yet "addressed how an ALJ is required to evaluate medical opinions" under Section 416.920c in a published opinion. Blanford Br. at 25. However, this Court has recently applied the identical language in 20 C.F.R. §404.1520c, which applies to applications for Social Security Disability Insurance ("SSDI") benefits. *See Rubin*, 116 F.4th at 148; *compare* §416.920c, *with* §404.1520c; *see also Kohler v. Astrue*, 546 F.3d 260, 265 n.4 (2d Cir. 2008) ("The regulations applicable to claims for SSI benefits parallel the regulations applicable to claims for SSDI benefits."). Our analysis here is consistent with the analysis in *Rubin*.

Mendlinger, a consultative psychiatric examiner. We disagree. The ALJ expressly considered both the consistency and the supportability of NP Charles's opinion that Blanford was "unable to work" and had "moderate to marked limitations in all areas of mental functioning that trended towards marked limitations in most areas," finding that the opinion was not supported by "records from [NP Charles's] practice" and was "inconsistent with the most recent treatment records" that showed more mild limitations. *Id.* Those conclusions are adequately supported by the record. Notably, NP Charles's opinion was contradicted by the opinion of Blanford's primary treating provider, Social Worker Bracero, who met with Blanford twice a week. Bracero opined that Blanford had only mild limitations, thanks to progressive symptom management and responsiveness to treatment.[2] The ALJ further explained that more recent medical records reflected milder limitations. We find no error in the ALJ's assessment of NP Charles's opinion.

Blanford also contends that the ALJ erred by "fail[ing] to sufficiently explain what overwhelming evidence permitted rejection" of Dr. Mendlinger's opinion for lack of consistency. Blanford Br. at 35. As an initial matter, the ALJ is not required to identify

---

[2] Blanford argues that it is "fundamentally unfair to reject NP Charles's opinions" on the basis that "'records from her practice' purportedly did not support her findings" because the ALJ failed to obtain records from NP Charles's practice – Accumedic/Fortune Society – from April 2020 to October 2021. Blanford Br. at 33. But the Administrative Record includes progress notes from Bracero, Blanford's treating social worker at Accumedic, from July 2020, October 2020, February 2021, and May 2021. And contrary to Blanford's arguments in his reply brief, those records *do* record symptoms, mental status findings, and recommended treatment. *See, e.g.*, Admin. R. at 1077 (progress note reporting that Blanford endorsed residual psychotic symptoms, including auditory hallucinations, and recommending continued treatment).

5

"overwhelming evidence" inconsistent with a medical opinion – particularly the opinion of a consulting evaluator – to find that opinion unpersuasive. The ALJ acknowledged that Dr. Mendlinger's conclusions about Blanford's limitations were "fairly well supported by [Blanford's] inability to complete a number of tasks due to low motivation." Admin. R. at 49. But the ALJ also observed that "the record as a whole," including the treating provider opinions, did not support a finding that "lack of motivation" was a significant problem for Blanford, identifying several records reporting Blanford's motivation and eagerness to engage in treatment. *Id.* To the extent that Blanford argues that the ALJ erred by not mentioning other evidence relevant to Blanford's symptoms in evaluating Dr. Mendlinger's opinion, "an ALJ is not required to discuss every piece of evidence submitted," and "failure to cite specific evidence does not indicate that such evidence was not considered." *Brault*, 683 F.3d at 448 (citation and quotation marks omitted).

Likewise, we disagree with Blanford's contention that the ALJ failed to adequately explain how he weighed the opinion of Dr. Sprung, an agency consultative examiner. Again, the ALJ adequately explained his assessment of Dr. Sprung's opinion and his reasons for finding it "partially persuasive." Admin. R. at 48.

In sum, the ALJ adequately explained how he assessed the persuasiveness of each medical opinion, discussed the consistency and supportability of each opinion, and documented inconsistencies among medical opinions with citations to the record. We discern no legal error in the ALJ's determinations.

6

**B.	Substantial Evidence**

Blanford also contends that the ALJ's residual functional capacity ("RFC") finding is not supported by substantial evidence.  We disagree.

 "[T]he ALJ is entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole."  *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (citation and quotation marks omitted).  The ALJ determined that Blanford's RFC allowed for "medium work" with non-exertional limitations of "simple, repetitive, routine tasks that can be explained" and which "involve making simple decisions and only occasional changes in routine," and "a low contact environment involving" no contact with the public and "only occasional contact with coworkers and supervisors." Admin. R. at 43.

The RFC finding is supported by the treatment records, Blanford's subjective statements, and the medical opinion evidence.  The opinion of Dr. Sprung, on which the ALJ partially relied, found moderate limitations in Blanford's ability to "sustain concentration and perform a task at a consistent pace, use reason and judgment to make work-related decisions, and understand, remember, or apply complex directions and instructions." *Id.* at 48.  The ALJ also considered that Dr. Sprung's opinion was fairly consistent with "examination findings from treating providers who noted [Blanford's] generally stable mental status even during periods of symptom exacerbations and paranoia." *Id.*  The RFC is also supported by the assessment of an agency psychological consultant, Dr. Bruni, upon which the ALJ partially relied. *Id.* Dr. Bruni found that Blanford "would benefit from a work setting with limited contact with coworkers and the

7

public due to difficulty with social interactions." *Id.* In fact, in determining Blanford's RFC, the ALJ found unpersuasive numerous opinions that found only mild limitations – including that of Blanford's treating social worker, Bracero – recognizing that mild limitations did not account for Blanford's "residual paranoia and occasional symptom exacerbations." *Id.* at 48-49.

Blanford contends that the RFC determination is flawed because it "did not include any limitations in Mr. Blanford's ability to sustain an ordinary routine and regular attendance nor his ability to regulate his emotions/behavior, be aware of normal hazards, or maintain appropriate hygiene." Blanford Br. at 38. He is mistaken. As to attendance, while the consulting evaluators found moderate to marked limitations, Bracero – who saw Blanford twice a week – found only mild limitations in that area. And the RFC includes limitations addressing the remaining concerns; it requires that Blanford's work should have no public contact, should involve only limited contact with coworkers, and "should not involve hazards." Admin. R. at 43.

Ultimately, we conclude that the RFC is supported by substantial evidence.

## II. The ALJ's Credibility Determination Was Not Error.

Blanford next contends that the ALJ failed to properly evaluate his credibility when determining his RFC because the ALJ found, in a "boilerplate conclusion," that Blanford's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but his "statements about the intensity, persistence, and limiting effects of his symptoms appear inconsistent with the objective evidence of record." Blanford Br. at 44 (citation and quotation marks omitted). We find no error.

8

"[A]n ALJ's credibility determination is generally entitled to deference on appeal." *Selian*, 708 F.3d at 420. "When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, . . . but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citations omitted); *see also* 20 C.F.R. §416.929.

In evaluating Blanford's subjective statements, the ALJ noted discord between his statements, on one hand, and the treatment record and objective medical evidence, on the other hand, as well as inconsistencies within Blanford's own statements. For example, the ALJ noted that there were "some inconsistencies in activities of daily living [reported] to various examiners during the relevant period, [but] the longitudinal record since the application date shows [Blanford] continued to live independently with his aunt without any episodes of decompensation that required inpatient treatment or hospitalization even during periods when [Blanford] was not compliant with treatment." Admin. R. at 47.[3] The ALJ also observed that although Blanford had stated that he could not work due to an inability to focus and hallucinations, the medical evidence from the relevant period

---

[3] Blanford also contends that the ALJ "placed undue weight on evidence of Mr. Blanford's minimal activities of daily living." Blanford Br. at 45. We disagree. The regulations specifically direct an ALJ to consider a claimant's daily activities in evaluating his reported symptoms. *See* 20 C.F.R. §416.929(c)(3)(i). The ALJ did not err in considering Blanford's statement that "he could attend to personal care, manage his finances, shop for necessities, prepare simple meals, and socialize with family" and that he went "out three to four times a week either by walking or using public transportation and indicated that he could shop for clothes and food." Admin. R. at 47.

indicated that Blanford's hallucinations responded well to treatment. The ALJ agreed that there was a "need for limitations to accommodate" Blanford's symptoms, but he found that the medical records did not support the "*full extent*" of Blanford's "subjective symptom reports." *Id.* (emphasis added). The ALJ was well within his province to "weigh[] the credibility of [Blanford's] testimony in light of the other evidence in the record" and to discount it accordingly. *Genier*, 606 F.3d at 49. We find no error.

### III. The New Evidence Presented to the Appeals Council Does Not Alter the Outcome.

Finally, the Appeals Council did not err in denying review based on new evidence – a report from Dr. Ryser – that Blanford submitted two months after the ALJ's decision. The Appeals Council found that "some of [Dr. Ryser's report] does not relate to the period at issue" and therefore "does not affect the decision about whether [Blanford was] disabled on or before August 19, 2022," and that "the evidence that does relate to the period at issue . . . does not show a reasonable probability that it would change the outcome of the decision." Admin. R. at 2.

The Appeals Council will consider evidence that was not presented to the ALJ when it is (1) new, (2) material, (3) "relates to the period on or before the date of the hearing decision," and (4) "there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §416.1470(a)(5). "When the Appeals Council denies review after considering new evidence, we simply review the entire administrative record, which includes the new evidence, and determine, as in every

10

case, whether there is substantial evidence to support the decision of the [Commissioner]." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Even assuming that the entirety of Dr. Ryser's report applies to the claim period, we agree with the Appeals Council that there is not a reasonable probability that the report would have changed the ALJ's decision. Dr. Ryser's report is materially similar to NP Charles's report, which the ALJ properly considered and found unpersuasive. In fact, Dr. Ryser opined that Blanford had *fewer* marked limitations than NP Charles identified. *Compare* Admin. R. at 11 (Dr. Ryser's report), *with id.* at 1543 (NP Charles's report).[4] Where, as here, "excluded evidence is essentially duplicative of evidence considered by the ALJ," remand is not required. *Zabala*, 595 F.3d at 409; *see also Castillo v. O'Malley*, No. 24-41-cv, 2024 WL 4707253, at *4 (2d Cir. Nov. 7, 2024) (summary order).

We have considered the parties' remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the District Court is **AFFIRMED.**

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[4] Dr. Ryser's report, which was based on a single evaluation of Blanford, is not entirely consistent with the record. For instance, Dr. Ryser found that Blanford has a marked limitation in his ability to use public transportation – a skill he reported having. Furthermore, many of the limitations identified by Dr. Ryser are addressed by the limitations included in the RFC finding.